**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOUIS TRIMBLE,<br><br>        Petitioner,<br><br>    v.<br><br>GARY SWARTOUT,<br><br>        Respondent. | Case No. 1:12-cv-01277-LJO-SKO-HC<br><br>FNDINGS AND RECOMMENDATIONS TO DISMISS AND DENY THE PETITION FOR WRIT OF HABEAS CORPUS (DOC. 1), DIRECT THE ENTRY OF JUDGMENT FOR RESPONDENT, AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>**OBJECTIONS DEADLINE:**<br>**THIRTY (30) DAYS** |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 through 304.  Pending before the Court is the petition, which was filed on August 6, 2012.  Respondent filed an answer on December 31, 2012.  Although the time for filing a traverse has passed, no traverse was filed.

I.   Jurisdiction

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh v.

1

Murphy, 521 U.S. 320, 327 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the Superior Court of the State of California, County of Merced (MCSC), located within the jurisdiction of this Court. 28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d). Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights. The Court concludes it has subject matter jurisdiction over the action pursuant to 28 U. S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. - , -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent Gary Swarthout, who, pursuant to the judgment, had custody of Petitioner at his institution of confinement when the petition and answer were filed. (Doc. 13.) Petitioner thus named as Respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules). See, Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).

The Court concludes that it has jurisdiction over the person of the Respondent.

II.  Background

A.  Procedural History

Petitioner was convicted in the MCSC of attempted willful,

2

deliberate, and premeditated murder in violation of Cal. Pen. Code §§ 187(a) and 664 (count 1), and attempted robbery in an inhabited dwelling house in violation of Cal. Pen. Code §§ 211, 212.5(a) and 664 (count 2) with personal and intentional discharge of a firearm proximately causing great bodily injury within the meaning of Cal. Pen. Code § 12022.53(d) (count 1 and 2) and a prior battery with infliction of serious bodily injury as a serious or violent felony or juvenile adjudication within the meaning of Cal. Pen. Code §§ 243(d), 1170.12(a)-(d), and 1192.7(c)(8) (counts 1 and 2).  On January 25, 2010, the MCSC imposed a term of life with the possibility of parole after fourteen (14) years (double the statutory seven-year minimum) on the attempted murder consecutive to a term of twenty-five (25) years to life on the accompanying firearm enhancement, and imposed and stayed an aggravated term of six years (double the statutory three-year term) on the attempted robbery consecutive to a term of 25 years to life on the accompanying firearm enhancement.  People v. Trimble, no. F059703, 2011 WL 2176906, at *1 (June 6, 2011).

      B.   Factual Summary

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1); Sanders v. Lamarque, 357 F.3d 943, 947-48 (9th Cir. 2004).  This presumption applies to a statement of facts drawn from a state appellate court's decision.  Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009).  The following statement of the facts of

Petitioner's case is taken from the opinion of the Court of Appeal

of the State of California, Fifth Appellate District (CCA) in People

v. Trimble, case number F059703, filed on June 6, 2011.

FACTUAL BACKGROUND

Early in the morning on November 5, 2008, Trimble stopped
by his girlfriend Caydee's motel room in Merced. During
the year or so she had known him, she had smoked crack
cocaine with him, slept with him, and, for a month or so,
lived in his trailer with him. The last time she had slept
with him was about a week before.

At her motel room that morning, Trimble accused Caydee of
"messing around" with his cousin Larry. She had never
slept with him. "You'll get what you deserve," he said,
right in front of the manager, "You'll get yours, bitch.
Watch." A couple of hours later, he called and told her,
"Oh, I'm sorry. I didn't mean what I said." Months before,
he had told her if she "ever stopped kicking it around" he
would kill her. Three or four times in the past, he had
argued with her over his cousin Larry.

Early in the evening on November 5, 2008, Caydee and her
friends Mark and Anthony stood outside her motel after
smoking methamphetamine together. Trimble walked from the
street to the motel, headed toward her room, and offered
everyone crack cocaine to smoke. After everyone went into
her room, he checked to make sure the door was locked,
pointed a gun at her, and said, "This is a robbery." He
said he needed $80 to go to Oakland.

Caydee, Mark, and Anthony all said no one had any money.
Trimble told her he knew she had money. She said, "I don't
have no money." He called her a liar, yelled at her again
for messing around with his cousin Larry, and shot her
four times. With each shot, he moved closer to her. He
said, "I'm going to kill you, bitch. I told you I would."
He was right in front of her when he shot her the last
time and told her, "You think I'm playing? You're F-ing
with my cousin, bitch." He said he had one more bullet he
was going to put in her head. He pointed the gun at her
head and pulled the trigger two or three times, but the
gun did not fire.

4

As Trimble ran to the door, he said, "This is worth seven years." On his way out, he said, "Just remember the C-dog," referring to his moniker. Shot twice in the stomach, once in the shoulder, and once in the leg, Caydee suffered a broken collarbone, a broken shoulder blade, and internal bleeding in her right chest cavity. Airlifted to a hospital in Modesto, she arrived in "very critical" condition due to multiple life-threatening gunshot wounds.

Later that evening, a Merced police officer approached Trimble on the street and asked him his name. He raised his hands in the air and said, "I'm Trimble. I'm the one you're looking for." He had gunshot residue on both of his hands.

People v. Trimble, no. F059703, 2011 WL 2176906, at *1-*2 (June 6, 2011).

III.   Prosecutorial Misconduct in Argument

Petitioner argues that the prosecutor committed misconduct when he argued to the jury that for Petitioner to be guilty of the lesser offense of attempted manslaughter, the shooting had to be reasonable.   Petitioner contends it is the provocation, and not the shooting, that has to be reasonable.   Petitioner argues that his conviction and the finding of premeditation must be reversed. (Pet., doc. 1, 4.)

A.   Standard of Decision and Scope of Review

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

1
2
3

> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

4      Clearly established federal law refers to the holdings, as

5  distinct from the dicta, of the decisions of the Supreme Court as of

6  the time of the relevant state court decision.  Cullen v.

7  Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v.

8  Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362,

9

10 412 (2000).

11     A state court's decision contravenes clearly established

12 Supreme Court precedent if it reaches a legal conclusion opposite

13 to, or substantially different from, the Supreme Court's or

14 concludes differently on a materially indistinguishable set of

15 facts.  Williams v. Taylor, 529 U.S. at 405-06.  The state court

16
17 need not have cited Supreme Court precedent or have been aware of

18 it, "so long as neither the reasoning nor the result of the state-

19 court decision contradicts [it]."  Early v. Packer, 537 U.S. 3, 8

20 (2002).  A state court unreasonably applies clearly established

21 federal law if it either 1) correctly identifies the governing rule

22
23 but applies it to a new set of facts in an objectively unreasonable

24 manner, or 2) extends or fails to extend a clearly established legal

25 principle to a new context in an objectively unreasonable manner.

26 Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002); see,

27
28 Williams, 529 U.S. at 407.  An application of clearly established

6

federal law is unreasonable only if it is objectively unreasonable; an incorrect or inaccurate application is not necessarily unreasonable.  Williams, 529 U.S. at 410.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even a strong case for relief does not render the state court's conclusions unreasonable.  Id.  To obtain federal habeas relief, a state prisoner must show that the state court's ruling on a claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 786-87.

The § 2254(d) standards are "highly deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof.  Cullen v. Pinholster, 131 S.Ct. at 1398. Habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA.  Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the

7

state court that adjudicated the claim on the merits." <u>Cullen v.</u>
<u>Pinholster</u>, 131 S.Ct. at 1398.  Evidence introduced in federal court
has no bearing on review pursuant to § 2254(d)(1).  <u>Id.</u> at 1400.

Title 28 U.S.C. § 2254(e)(1) provides that in a habeas
proceeding brought by a person in custody pursuant to a judgment of
a state court, a determination of a factual issue made by a state
court shall be presumed to be correct; the petitioner has the burden
of producing clear and convincing evidence to rebut the presumption
of correctness.  A state court decision on the merits based on a
factual determination will not be overturned on factual grounds
unless it was objectively unreasonable in light of the evidence
presented in the state proceedings.  <u>Miller-El v. Cockrell</u>, 537 U.S.
322, 340 (2003).  For relief to be granted, a federal habeas court
must find that the trial court's factual determination was such that
a reasonable fact finder could not have made the finding; that
reasonable minds might disagree with the determination or have a
basis to question the finding is not sufficient.  <u>Rice v. Collins</u>,
546 U.S. 333, 340-42 (2006).

To conclude that a state court finding is unsupported by
substantial evidence, a federal habeas court must be convinced that
an appellate panel, applying the normal standards of appellate
review, could not reasonably conclude that the finding is supported
by the record.  <u>Taylor v. Maddox</u>, 366 F.3d 992, 999-1001 (9th Cir.
2004).  To determine that a state court's fact finding process is
defective in some material way or non-existent, a federal habeas

8

court must be satisfied that an appellate court would be unreasonable in holding that the state court's fact finding process was adequate.  <u>Id.</u> at 1000.

With respect to each claim, the last reasoned decision must be identified to analyze the state court decision pursuant to 28 U.S.C. § 2254(d).  <u>Barker v. Fleming</u>, 423 F.3d 1085, 1092 n.3 (9th Cir. 2005); <u>Bailey v. Rae</u>, 339 F.3d 1107, 1112-13 (9th Cir. 2003).  Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.  <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

Where the state court decides an issue on the merits which is not accompanied by an explanation, a habeas petitioner burden must show there was no reasonable basis for the state court to deny relief.  <u>Harrington v. Richter</u>, 131 S.Ct. 770, 784.  This Court should then perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. <u>Medley v. Runnels</u>, 506 F.3d 857, 863 n.3 (9th Cir. 2007), <u>cert. denied,</u> 552 U.S. 1316 (2008); <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).  Independent review is not the equivalent of <u>de novo</u> review; the Court must still defer to the state court's ultimate decision.  <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167 (9th Cir. 2002).

However, the deferential standard of § 2254(d) applies only to claims that have been resolved on the merits by the state court.  If a claim was not decided on the merits, this Court must review it <u>de novo</u>.  <u>Lambert v. Blodgett</u>, 393 F.3d 943, 965 (9th Cir. 2004); <u>Lewis v. Mayle</u>, 391 F.3d 989, 996 (9th Cir. 2004).  The deferential

9

standard of § 2254(d) sets a substantially higher threshold for

relief than does the standard of <u>de</u> <u>novo</u> review, which requires

relief for an incorrect or erroneous application of federal law.

<u>Renico v. Lett</u>, 559 U.S. 766, 773 (2010).

        B.   The State Court's Decision

      The decision of the CCA on direct appeal was left undisturbed

by the decision of the California Supreme Court (CSC) to deny

review.  (LD 10-LD 11; ord. summarily denying petn. for rev., <u>People</u>

<u>v. Trimble</u>, case no. S194041, dated August 10, 2011.)[1]  The CCA's

decision was thus the last reasoned decision in which the state

court adjudicated Petitioner's claims on the merits.  This Court

will thus "look through" the unexplained decision of the CSC to the

CCA's last reasoned decision as the relevant state court

determination.  <u>Ylst v. Nunnemaker</u>, 501 U.S. at 803-04; <u>Taylor v.</u>

<u>Maddox</u>, 366 F.3d 992, 998 n.5 (9th Cir. 2004).

      The decision of the CCA is in pertinent part as follows:

1. Jury Argument

Trimble argues that the prosecutor committed misconduct in
argument to the jury. The Attorney General argues the
contrary.

The crux of Trimble's argument is that the prosecutor's
bid to persuade the jury that he committed an attempted
murder, rather than an attempted voluntary manslaughter,

---

[1] The Court takes judicial notice of the docket as posted on the official website
pursuant to Fed. R. Evid. 201(b).  <u>United States v. Bernal-Obeso</u>, 989 F.2d 331,
333 (9th Cir. 1993); <u>Daniels-Hall v. National Education Association</u>, 629 F.3d 992,
999 (9th Cir. 2010).  It is appropriate to take judicial notice of the docket
sheet of a California court.  <u>White v Martel</u>, 601 F.3d 882, 885 (9th Cir. 2010),
<u>cert.</u> <u>denied</u>, 131 S.Ct. 332 (2010).  The address of the official website of the
California state courts is <u>www.courts.ca.gov</u>.

focused on the reasonableness of his response to the
provocation. Arguing that "there's no sudden quarrel or
heat of passion," the prosecutor urged the jury to "look
at how the defendant responded to his belief that Caydee,
a prostitute, had had sex with his cousin Larry. That's
what you have to do."

"And then if you think that's how an ordinary, average
person would react to the situation, then this is the
lesser included offense for you people," the prosecutor
went on. "If you think that his actions were appropriate
under that circumstance where you find out that his cousin
Larry was sleeping with somebody or cousin Larry was
sleeping with Caydee and the appropriate thing is to go
get a gun and go to the motel room and rob her and shoot
her, then this is the jury instruction that you want. I
submit to you that that's ridiculous." Trimble's attorney
objected and characterized the prosecutor's argument as "a
misstatement of the law." The court instructed the jurors
"that if what counsel argues conflicts with the Court"
they "are to follow what the Court instructs them,"
informed the jurors "they will get a copy of the
instructions," and overruled the objection.

After characterizing his own comments as "condensed down
of what the law says," the prosecutor quoted CALCRIM No.
603 ("Attempted Voluntary Manslaughter: Heat of Passion—
Lesser Included Offense") on the jury's duty, in
determining whether the provocation was sufficient, to
"consider whether an ordinary person of average
disposition would have been provoked and how such a person
would react in the same situation knowing the same facts."

On that record, Trimble argues that "the prosecutor
misstated the law." We disagree. After asking the jury to
"look at how the defendant responded to his *belief* that
Caydee, a prostitute, had had sex with his cousin Larry,"
the prosecutor emphasized that Trimble "cannot *create* his
own provocation." (Italics added.) "Would it be
reasonable," he asked, "for a man to accuse a woman of
sleeping with someone else and then, based on that, go and
shoot her and try to kill her just because of some *wild
speculations* that she's having sex with another man?"
(Italics added.) "You must consider," he argued, "whether
*an ordinary person of average disposition* would have been
provoked and how such a person would react in the same
situation." (Italics added.)

11

A person kills on sudden quarrel or heat of passion if a provocation that was sufficient to cause *an ordinary person of average disposition* to act rashly and without deliberation obscured his or her reason. (*People v. Breverman* (1998) 19 Cal.4th 142, 163 (*Breverman*).) The primary authority on which Trimble relies, *People v. Najera* (2006) 138 Cal.App.4th 212, 223 (*Najera*), applies the rule of law in *Breverman* and notes, "The focus is on the provocation—the surrounding circumstances—and whether it was sufficient to cause a reasonable person to act rashly. How the killer responded to the provocation and the reasonableness of the response is not relevant to sudden quarrel or heat of passion." (*Id.* at p. 223.) Here, the prosecutor argued that Trimble's *wild speculations* could not let him create his own provocation since the jury's responsibility was to "consider whether *an ordinary person of average disposition* would have been provoked and how such a person would react in the same situation knowing the same facts." Trimble's reliance on *Najera* is misplaced.

The question in a prosecutorial misconduct claim focusing on a prosecutor's comments to a jury is whether there is a reasonable likelihood that the jury applied or construed any of those comments in an objectionable fashion. (*People v. Morales* (2001) 25 Cal.4th 34, 44.) The appellate court's duty is to view those comments in the context of the prosecutor's argument as a whole. (*People v. Lucas* (1995) 12 Cal.4th 415, 475.) A prosecutor's argument is an advocate's point of view that generally carries less weight with a jury than a court's instruction, which is a binding and definitive statement of the law. (*Boyde v. California* (1990) 494 U.S. 370, 384–385.) So an appellate court will not infer lightly a jury drew a damaging inference from a single comment in a prosecutor's entire exhortation. (*Id.* at p. 385.) After the prosecutor's argument, the court instructed the jury, "You must follow the law as I explain it to you, even if you disagree with it. If you believe the attorneys' comments on the law conflict with my instructions, you must follow my instructions." (CALCRIM No. 200.) "We presume that jurors understand and follow the court's instructions." (*People v. Gray* (2005) 37 Cal.4th 168, 231 (*Gray*).) By the applicable standard of review, the record persuades us that the jury did not apply or construe any of the prosecutor's comments in an objectionable fashion.

People v. Trimble, 2011 WL 2176906, at *2-*4.

C.   Analysis

A prosecutor's improper remarks violate the Constitution only if they so infect the trial with unfairness as to make the resulting conviction a denial of due process. Parker v. Matthews, – U.S. –, 132 S.Ct. 2148, 2153 (2012) (per curiam); see Darden v. Wainwright, 477 U.S. 168, 181 (1986); Comer v. Schriro, 480 F.3d 960, 988 (9th Cir. 2007). Prosecutorial misconduct deprives the defendant of a fair trial guaranteed by the Due Process Clause if it prejudicially affects the substantial rights of a defendant. United States v. Yarbrough, 852 F.2d 1522, 1539 (9th Cir. 1988) (citing Smith v. Phillips, 455 U.S. 209, 219 (1982)). The standard of review of claims concerning prosecutorial misconduct in § 2254 proceedings is the narrow standard of due process, and not the broad standard that applies in the exercise of supervisory power; improper argument does not, per se, violate a defendant's constitutional rights. Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (citing Thompson v. Borg, 74 F.3d 1571, 1576 (9th Cir. 1996)). This Court must determine whether the alleged misconduct has rendered a trial fundamentally unfair, Darden v. Wainwright, 477 U.S. at 183, and whether the prosecutor's actions constituted misconduct which violated Petitioner's right to due process of law. Drayden v. White, 232 F.3d 704, 713 (9th Cir. 2000).

To grant habeas relief, this Court must also conclude that the state court's rejection of the prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

13

fairminded disagreement." Parker v. Matthews, 132 S.Ct. at 2155 (quoting Harrington v. Richter, 131 S.Ct. at 767-87). The standard of Darden v. Wainwright is a very general one that leaves courts with more leeway in reaching outcomes in case-by-case determinations. Parker v. Matthews, 132 S.Ct. at 2155 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). In determining whether remarks in argument rendered a trial fundamentally unfair, a court must judge the remarks in the context of the entire proceeding to determine whether the argument influenced the jury's decision. Boyde v. California, 494 U.S. 370, 385 (1990); Darden v. Wainwright, 477 U.S. at 179-82. In Darden, the Court considered whether the prosecutor manipulated or misstated evidence, whether specific rights of the accused were implicated, the context of the remarks in light of both parties' arguments, the instructions given by the trial court, and the weight of the evidence. Darden, 477 U.S. at 179-82.

Here, to the extent that the state court interpreted or applied state law concerning the substantive law of homicide, this Court is bound by the state court's decision, and any error under state law provides no basis for relief in this proceeding. Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation. Wilson v. Corcoran, 131 S.Ct. at 16; Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Alleged errors in the application of state law are not cognizable in federal habeas corpus. Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002). The Court accepts a state court's interpretation of state law. Langford v. Day, 110 F.3d 1180, 1389

14

(9th Cir. 1996).  This Court is, therefore, bound by the state court's statement of the elements of voluntary manslaughter.

With respect to the federal issue, the CCA stated a legal standard consistent with the foregoing federal standards.  The state court's decision that there was no prejudicial misconduct on the part of the prosecutor was objectively reasonable.  The state court viewed the challenged statements in the context of the entire argument.  Although the prosecutor made reference to the Petitioner's response to the provocation, he then focused on the nature of the provocation, reiterated the instruction on provocation, and directed the jury to consider how an ordinary person would react to the situation to determine if the provocation was sufficient.

The state court also considered the instructions given.  Both before closing argument and after Petitioner's counsel objected, the court instructed the jury that if counsel's statements conflicted with the court's instructions, the jury was to follow the court's instructions.  (LD 5, 3 RT 512-13, 564-65.)  The jury was also instructed that nothing the attorneys said was evidence.  (3 RT 515.)  The jury was instructed on the elements of attempted murder and attempted voluntary manslaughter (3 RT 528-32, 537-39) and that the prosecution had the burden of proving each element beyond a reasonable doubt (3 RT 514-15, 523, 532, 534-35).  Federal courts presume that juries follow instructions.  Weeks v. Angelone, 528 U.S. 225, 234 (2000).  A fairminded jurist could conclude that the jurors followed the instructions, which were authoritative.  See Boyde v. California, 494 U.S. at 384-85.

15

1     To the extent there was any transient uncertainty created by

2 the prosecutor's remarks, the arguments of advocates are somewhat

3 improvisational and must not be unduly restrained.  "Counsel are

4 given latitude in the presentation of closing arguments, and courts

5 must allow the prosecution to strike hard blows based on the

6 evidence presented and all reasonable inferences therefrom."  Ceja

7 v. Stewart, 97 F.3d 1246, 1253-54 (9th Cir. 1996) (quoting United

8 States v. Baker, 10 F.3d 1374, 1415 (9th Cir. 1993)).  A reviewing

9 court should consider challenged remarks in light of the realistic

10 nature of closing arguments at trial.  "Because 'improvisation

11 frequently results in syntax left imperfect and meaning less than

12 crystal clear,' 'a court should not lightly infer that a prosecutor

13 intends an ambiguous remark to have its most damaging meaning or

14 that a jury, sitting through lengthy exhortation, will draw that

15 meaning from the plethora of less damaging interpretations.'"

16 Williams v. Borg, 139 F.3d 737, 744 (9th Cir. 1998) (quoting

17 Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974)).

18     In sum, the state court's decision was not contrary to, or an

19 unreasonable application of, clearly established federal law.

20 Accordingly, it will be recommended that the Court deny Petitioner's

21 claim that the prosecutor engaged in prejudicial misconduct in

22 argument that resulted in fundamental unfairness.

23     IV.   Instruction on Voluntary Manslaughter

24     Petitioner argues that CALCRIM 603, the instruction on

25 voluntary or "heat-of-passion" manslaughter, was confusing and

26 misleading because it suggested that the response to provocation

27 must be reasonable, and it was reasonably likely that the jury

28 interpreted the instruction in such a manner.  (Pet., doc. 1, 4-5.)

16

A.   <u>The State Court's Decision</u>

The decision of the CCA on direct appeal was left undisturbed by the CSC's denial of review. (LD 10-LD 11.) The decision of the CCA on the issue is as follows:

2. CALCRIM No. 603

Trimble argues that CALCRIM No. 603 improperly suggests that a response to provocation be reasonable. The Attorney General argues the contrary.

The fundamental problem with CALCRIM No. 603, Trimble argues, is that the instruction "says opposite things at the same time." He acknowledges the initial focus on the provocative acts of the victim "correctly informs the jury" provocation would have caused a "person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment." He argues, however, that the instruction errs by stating, "It is not enough that the defendant simply was provoked," and by requiring the jury to "consider whether a person of average disposition would have been provoked and how such a person would react in the same situation knowing the same facts."

Contrary to Trimble's argument, CALCRIM No. 603 correctly tracks the law of provocation and heat of passion. The factor that distinguishes voluntary manslaughter in the heat of passion from murder is provocation. (*People v. Lee* (1999) 20 Cal.4th 47, 59.) Just as the provocation must "cause an ordinary person of average disposition to act rashly or without due deliberation and reflection," so the cause of the provocation must be either the victim or the conduct in which the defendant reasonably believed the victim was engaged. (*Ibid.*) The law requires no specific type of provocation. (*People v. Lasko* (2000) 23 Cal.4th 101, 108.)

Heat of passion arises when passion so disturbs or obscures the defendant's reason at the time of the killing or attempted killing as to cause the ordinarily reasonable person of average disposition to act rashly, without deliberation and reflection, and from passion rather than from judgment. (*People v. Barton* (1995) 12 Cal.4th 186, 201.) The passion the provocation causes may be any violent, intense, high-wrought or enthusiastic emotion

17

other than revenge. (*Breverman, supra*, 19 Cal.4th at p. 163.) The legal requirement of heat of passion has both an objective and a subjective component. (*People v. Steele* (2002) 27 Cal.4th 1230, 1252.) Just as, objectively, heat of passion must naturally arise in the mind of an ordinarily reasonable person under the given facts and circumstances, so, subjectively, the defendant must actually kill or attempt to kill on heat of passion. (*Ibid.*) CALCRIM No. 603, rather than saying "opposite things at the same time," correctly incorporates both the objective and the subjective components of heat of passion. "We presume that jurors understand and follow the court's instructions." (*Gray, supra*, 37 Cal.4th at p. 231.)

On a challenge for ambiguity, our duty is to view the instruction at issue in the context of the overall charge to the jury, rather than in artificial isolation, to determine whether there is a reasonable likelihood that the jury misunderstood and misapplied the instruction. (*People v. Mayfield* (1997) 14 Cal.4th 668, 777.) Our review of the record satisfies us there is no reasonable likelihood that the jury misunderstood or misapplied CALCRIM No. 603 .FN2

    FN2. Our holding moots the Attorney General's forfeiture and invited error arguments.

People v. Trimble, 2011 WL 2176906, at *4-*5.

    B.  Analysis

    Insofar as Petitioner's claim rests on the California court's definitions of provocation and heat of passion, or any other precept of state law, Petitioner is not entitled to relief in this proceeding.  28 U.S.C. § 2254(a); Souch v. Schaivo, 289 F.3d at 623.

    With respect to Petitioner's claim of fundamental unfairness resulting from a perceived error in jury instructions, the only basis for federal collateral relief for instructional error is that the infirm instruction or the lack of instruction by itself so infected the entire trial that the resulting conviction violates due process.  Estelle, 502 U.S. at 72; Cupp v. Naughten, 414 U.S. 141,

18

147 (1973); see Donnelly v. DeChristoforo, 416 U.S. at 643 (it must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some right guaranteed to the defendant by the Fourteenth Amendment).  The instruction may not be judged in artificial isolation; it must be considered in the context of the instructions as a whole and the trial record.  Estelle, 502 U.S. at 72.  It must be determined whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. Estelle, 502 U.S. at 72-73 (reaffirming the standard as stated in Boyde v. California, 494 U.S. 370, 380 (1990)).  The Court in Estelle emphasized that the Court has defined the category of infractions that violate fundamental fairness very narrowly, and that beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.  Id. at 72-73.

Even if there is instructional error, a petitioner is generally not entitled to habeas relief for the error unless it is prejudicial.  To determine whether a petitioner pursuant to § 2254 suffered prejudice from an instructional error, a federal court must determine whether a petitioner suffered actual prejudice by assessing whether, in light of the record as a whole, the error had a substantial and injurious effect or influence in determining the jury's verdict.  Hedgpeth v. Pulido, 555 U.S. 57, 62 (2008); Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).

Here, this Court is bound by the state court's determination of the governing law of provocation and heat of passion.  The instruction as given was correct.  There was nothing in the circumstances attending the trial proceedings that would suggest the

existence of any basis for concluding that despite the accuracy of the instructions, the jury was confused.  The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law.

Accordingly, it will be recommended that the Court deny Petitioner's claim of a fundamentally unfair instruction.

V.   Ineffective Assistance of Trial Counsel regarding Jury Instruction

Petitioner alleges his right to the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments was violated by trial counsel's failure to request an instruction that relates provocation to the absence of premeditation.  (Pet., doc. 1, 5.)

A.   The State Court's Decision

The last reasoned decision on this issue is the CCA's decision on direct appeal, which was left undisturbed when the CSC denied review.  The CCA's decision in pertinent part is as follows:

3. Assistance of Counsel

Trimble argues that his attorney rendered ineffective assistance of counsel by not requesting an instruction on provocation and the absence of premeditation. The Attorney General argues the contrary.

Since a court has no *sua sponte* duty to give a pinpoint instruction like the one Trimble puts at issue, he challenges the absence of that instruction on the ground of ineffective assistance of counsel. (*People v. Rogers* (2006) 39 Cal.4th 826, 877-878 (*Rogers*); *People v. Middleton* (1997) 52 Cal.App.4th 19, 30-33, disapproved on another ground by *People v. Gonzalez* (2003) 31 Cal.4th 745, 752, fn. 3.) The right to counsel protects the due process right to a fair trial by guaranteeing "access to counsel's skill and knowledge" and implementing the constitutional entitlement to an "'ample opportunity to meet the case of the prosecution.'" (*Strickland v.*

20

*Washington* (1984) 466 U.S. 668, 684-686 (*Strickland*).) To establish ineffective assistance, the defendant must show that counsel's performance both "fell below an objective standard of reasonableness" and prejudiced the defense. (*Id.* at pp. 687-692; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217 (*Ledesma*).) To establish prejudice, the defendant must show a "reasonable probability" "sufficient to undermine confidence in the outcome" that but for counsel's performance "the result of the proceeding would have been different." (*Strickland, supra*, at pp. 693-694; *Ledesma, supra*, at pp. 217-218.) A reviewing court can adjudicate an ineffective assistance of counsel claim solely on the issue of prejudice without evaluating counsel's performance. (*Strickland, supra*, at p. 697 .) We do so here.

Our analysis begins with other instructions on mental state. One was CALCRIM No. 600 ("Attempted Murder"), authorizing the jury to find Trimble guilty of attempted murder only on proof that he "intended to kill" Caydee, and another was CALCRIM No. 601 ("Attempted Murder: Deliberation and Premeditation"), elaborating on deliberation and premeditation: "If you find the defendant guilty of Attempted Murder under Count 1, you must then decide whether the People have proved the additional allegation that the Attempted Murder was done willfully, and with deliberation and premeditation. [¶] The defendant acted willfully if he intended to kill when he acted. The defendant deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant premeditated if he decided to kill before acting. [¶] The length of time the person spends considering whether to kill does not alone determine whether the attempted killing is deliberate and premeditated." As the instruction noted, "The test is the extent of the reflection, not the length of time."

Additionally, the charge to the jury included CALCRIM No. 603 ("Attempted Voluntary Manslaughter: Heat of Passion— Lesser Included Offense") elaborating on provocation (cf. ante, part 2): "An attempted killing that would otherwise be attempted murder is reduced to Attempted Voluntary Manslaughter if the defendant attempted to kill someone because of a sudden quarrel or in the heat of passion. [¶] The defendant attempted to kill someone because of a sudden quarrel or in the heat of passion if: [¶] 1. The

21

defendant took at least one direct but ineffective step toward killing a person; [¶] 2. The defendant intended to kill that person; [¶] 3. The defendant attempted the killing because he was provoked; [¶] 4. The provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment; [¶] AND [¶] 5. The attempted killing was a rash act done under the influence of intense emotion that obscured the defendant's reasoning or judgment. [¶] Heat of passion does not require anger, rage, or any specific emotion. It can be any violent or intense emotion that causes a person to act without due deliberation and reflection. [¶] In order for heat of passion to reduce an attempted murder to attempted voluntary manslaughter, the defendant must have acted under the direct and immediate influence of provocation as I have defined it. While no specific type of provocation is required, slight or remote provocation is not sufficient. Sufficient provocation may occur over a short or long period of time. [¶] It is not enough that the defendant simply was provoked. The defendant is not allowed to set up his own standard of conduct. You must decide whether the defendant was provoked and whether the provocation was sufficient. In deciding whether the provocation was sufficient, consider whether an ordinary person of average disposition would have been provoked and how such a person would react in the same situation knowing the same facts. [¶] If enough time passed between the provocation and the attempted killing for an ordinary person of average disposition to 'cool off' and regain his or her clear reasoning and judgment, then the attempted murder is not reduced to attempted voluntary manslaughter on this basis."

On that record, Trimble suggests CALCRIM No. 522 ("Provocation: Effect on Degree of Murder") as the instruction his attorney should have requested on provocation and the absence of premeditation: "Provocation may reduce a murder from first degree to second degree and may reduce a murder to manslaughter. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. Also, consider the provocation in deciding whether the defendant committed murder or manslaughter." Arguing there was no need for CALCRIM No. 522, the Attorney

22

General notes that the instruction "is primarily concerned with the effect of provocation on the degree of murder" but "could have been modified" to inform the jury that "provocation may reduce an attempted murder to an attempted manslaughter."

The crux of Trimble's argument is that although "provocation was the only defense offered" the instructions did not authorize the jury to "consider provocation on the separate premeditation allegation." The Attorney General argues that the charge to the jury adequately covered provocation and premeditation. We agree. Our Supreme Court has rejected an argument like Trimble's involving CALJIC instructions analogous to the CALCRIM instructions here (*Rogers, supra*, 39 Cal.4th at p. 880): "[T]he standard manslaughter instruction is not misleading, because the jury is told that premeditation and deliberation is the factor distinguishing first and second degree murder. Further, the manslaughter instruction does not preclude the defense from arguing that provocation played a role in preventing the defendant from premeditating and deliberating; nor does it preclude the jury from giving weight to any evidence of provocation in determining whether premeditation existed."

Here, as Trimble argues, his attorney "relied exclusively on the provocation defense at trial," as his closing argument to the jury shows. In addition, the jury found true the allegation that the attempted murder he committed "was willful, deliberate and premeditated." By making that finding, the jury necessarily rejected his defense that provocation negated deliberation and premeditation. The requisite showing of prejudice is lacking since the record shows no reasonable probability that, even if his attorney had requested CALCRIM No. 522, the result of the proceeding would have been different. (*Strickland, supra*, 466 U.S. at p. 697.) His ineffective assistance of counsel argument is meritless.

People v. Trimble, 2011 WL 2176906, at *5–*7.

        B.   Analysis

    The law governing claims concerning ineffective assistance of

counsel is clearly established for the purposes of the AEDPA

deference standard set forth in 28 U.S.C. § 2254(d).   Premo v.

Moore, 131 S.Ct. at 737-38; Canales v. Roe, 151 F.3d 1226, 1229 n.2 (9th Cir. 1998).

To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that 1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-94 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).

With respect to this Court's review of a state court's decision concerning a claim of ineffective assistance of counsel, the Supreme Court has set forth the standard of decision as follows:

> To establish ineffective assistance of counsel "a defendant must show both deficient performance by counsel and prejudice." Knowles v. Mirzayance, 556 U.S. --,--,129 S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009). In addressing this standard and its relationship to AEDPA, the Court today in Richter, -- U.S., at -- - --, 131 S.Ct. 770, gives the following explanation:
>
> > "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.' [Strickland,] 466 U.S., at 688 [104 S.Ct. 2052]. A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. Id., at 689 [104 S.Ct. 2052]. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id., at 687 [104 S.Ct. 2052].

24

"With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' ...

" 'Surmounting Strickland's high bar is never an easy task.' Padilla v. Kentucky, 559 U.S. --, -- [130 S.Ct. 1473, 1485, 176 L.Ed.2d 284] (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial proceedings], and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690 [104 S.Ct. 2052]. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' Id., at 689 [104 S.Ct. 2052]; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S.Ct. 2052.

"Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both 'highly deferential,' id., at 689 [104 S.Ct. 2052]; Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, Knowles, 556 U.S., at ----, 129 S.Ct., at 1420.

> The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ---- [129 S.Ct., at 1420]. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard."

<u>Premo v. Moore</u>, 131 S.Ct. at 739-40 (quoting <u>Harrington v. Richter</u>, 131 S.Ct. 770).

This Court is bound by the state court's determination that the jury was correctly instructed. The record supports the state court's finding that Petitioner's counsel was permitted to argue that Petitioner acted in a rash manner without due deliberation (3 RT 578, 575-80) and that the conduct that resulted from provocation was not performed with the requisite state of mind required for attempted murder (3 RT 575-80, 584-92). In light of the defense argument and the common sense notion that provocation is the sort of phenomenon that would affect how deliberate and premeditated a subsequent action was, it is not persuasive to assert that the trier of fact would not understand it could consider circumstances of provocation in determining whether or not Petitioner's action was the product of premeditation and deliberation. The jury instructions given permitted the jury to consider not only whether provocation mitigated intent to kill, but also whether it negated premeditation and deliberation. The jury rejected the provocation defense with respect to negation of both malice and premeditation. The evidence of threatening to kill the victim earlier in the day as well as planning and arming strongly supports the jury's verdict that Petitioner committed a premeditated, deliberate, and

26

intentional attempt to kill.  The state court properly concluded that counsel's failure to request a pinpoint instruction on provocation's relationship with premeditation and deliberation was neither objectively unreasonable nor prejudicial.  Cf. James v. Borg, 24 F.3d 20, 27 (9th Cir. 1994).

Accordingly, it will be recommended that the Court deny Petitioner's claim that his counsel was incompetent for failing to request a pinpoint instruction relating provocation and premeditation.

VI.   Trial Court's Response to Jury's Question

Petitioner argues that the trial court erred in failing to respond adequately and correctly to the jury's question about premeditation.  (Pet., doc. 1, 5.)

A.   The State Court's Decision

The CSC left undisturbed the CCA's decision on this claim that issued on direct appeal.  The pertinent portion of the CCA's decision is as follows:

4. Jury Request

Trimble argues that the court's failure to elaborate on the law after the jury requested clarification of premeditation prejudiced him. The Attorney General argues the contrary.

After deliberating for over an hour and a half, the jury sent the court the request, "Clarification on the law: If someone goes to rob someone else and commits a shooting, is the shooting considered premeditated?" The court read the request to both counsel and asked if either had "any objection to stating, 'Please refer to the jury instructions'?" Both replied, "No." The court answered the jury's question as agreed.

Trimble's opening brief argues the court violated section 1138 by failing to ensure that the jury understood the

27

law.FN3 (See *People v. Beardslee* (1991) 53 Cal.3d 68, 96–97.) The Attorney General argues Trimble forfeited his right to appeal the issue by failing to object. (See *People v. Roldan* (2005) 35 Cal.4th 646, 729, disapproved on another ground by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 ["When a trial court decides to respond to a jury's note, counsel's silence waives any objection under section 1138."]) With commendable candor, Trimble's reply brief acknowledges the Attorney General's response "appears to be correct" but argues, for the first time, his attorney's silence was ineffective assistance of counsel. To raise an issue for the first time in a reply brief is to waive the issue on appeal. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3.)

> FN3. Section 1138 provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

Even so, to obviate possible later litigation of Trimble's claim of ineffective assistance of counsel, we choose, in the interest of judicial efficiency, to address his argument. (*People v. Williams* (1998) 61 Cal.App.4th 649, 657, citing, e.g., *People v. Marshall* (1996) 13 Cal.4th 799, 831.) Again we do so solely on the issue of prejudice without evaluating counsel's performance. (*Strickland, supra*, 466 U.S. at p. 697.) The evidence of Trimble's guilt of attempted willful, deliberate, and premeditated murder was overwhelming. The court adequately instructed the jury on premeditation. The jury asked no other questions about premeditation. To establish prejudice, Trimble must show a "reasonable probability" "sufficient to undermine confidence in the outcome" that but for counsel's performance "the result of the proceeding would have been different." (*Strickland, supra*, at pp. 693–694; *Ledesma, supra*, 43 Cal.3d at pp. 217–218.) Since the record shows no reasonable probability that, even if the court had elaborated on the law, the result of the proceeding would have been different, the requisite

showing of prejudice is lacking. (*Strickland, supra*, 466
U.S. at p. 697.) His ineffective assistance of counsel
argument is meritless.

People v. Trimble, 2011 WL 2176906, at *7-*8.

        B.   Analysis

    Although Petitioner's claim may have been subject to procedural

default in state court, Respondent contends that Petitioner's claim

is nevertheless subject to denial because it is not colorable.

    In a habeas case, the issue of procedural bar need not be

resolved if another issue is capable of being resolved against the

petitioner.  Lambrix v. Singletary, 520 U.S. 518, 525 (1997).

Likewise, the procedural default issue, which may necessitate

determinations concerning cause and miscarriage of justice, may be

more complex than the underlying issues in the case.  In such

circumstances, it may make more sense to proceed to the merits.  See

Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002).

    Here, because Petitioner also asserts ineffective assistance of

counsel based on counsel's failure to challenge the court's response

to the jury question, the Court will proceed to the merits of

Petitioner's claim.

    As previously set forth, Petitioner's claim of inadequate or

erroneous instruction of the jury warrants relief only if the

instructions so infected the entire trial that the resulting

conviction violates due process.  Estelle, 502 U.S. at 72.  The

totality of the instructions are considered in light of the trial

record in determining whether there is a reasonable likelihood that

the jury has applied the challenged instruction in a way that

violates the Constitution.  Estelle, 502 U.S. at 72-73.

///

These standards apply in the context of a court's response to a jury's question concerning application of the law to specific facts. In <u>Weeks v. Angelone</u>, 528 U.S. 225, 232-33 (2000), a capital case, the court considered the adequacy of instructions given to the jury regarding consideration of mitigating evidence in the penalty phase and the sufficiency of the court's response to a jury's question concerning application of the instructions to specific facts. The Court held that the Constitution was satisfied by the trial court's legally adequate instruction on the law and then directing the jury's attention to the portion of the instruction that related to their question. <u>Id.</u> at 234. The Court relied on the presumptions that jurors follow instructions and they understand a judge's answer to a question. <u>Id.</u> at 234. The Court noted that the presumption was unrebutted because after the jury received the response to its question, it continued to deliberate without any indication of any continuing misunderstanding or confusion. <u>Id.</u>

Here, the jury had been instructed correctly on the law of homicide, including murder, voluntary manslaughter, premeditation and deliberation, provocation, and the relationship among them. When faced with a question regarding a specific application of the law to the facts, the trial court acted in conformity with Supreme Court precedent by directing the jury to the law that corresponded with their question. (3 RT 611-12.) After the Court answered the jury's question, the jury continued to deliberate without any indication that there was continued misunderstanding, confusion, or other need for information. There was no objection by Petitioner's counsel to the court's handling of the question. The record reflects that the jury understood the answer and proceeded to

30

1   deliberate in accordance with the instructions.

2        In sum, there is no showing of an instructional inadequacy that

3   rendered Petitioner's trial unfair.  Whether the claim is judged

4   under the deferential standard of § 2254(d) or under the more

5   demanding standard of <u>de novo</u> review, Petitioner has not shown a

6   violation of his right to a fair trial.  <u>Cf.</u> <u>Knowles v. Mirzayance</u>,

7   556 U.S. 111, 123-24 (2009).  Accordingly, it will be recommended

8   that the Court deny Petitioner's claim concerning the trial court's

9   response to the juror's question.

10       VII.  <u>Cumulative Error</u>

11       Petitioner alleges that the cumulative errors set forth above

12  deprived him of his right to due process of law protected by the

13  Fourteenth Amendment because they confused the jury regarding key

14  elements of provocation, premeditation, and manslaughter.  (Pet.,

15  doc. 1, 6.)

16       A.   <u>The State Court's Decision</u>

17       The CSC's denial of review left undisturbed the CCA's decision

18  on direct appeal on this issue, which was the last reasoned state

19  court decision.  The pertinent part of the CCA's decision is as

20  follows:

21       5. Cumulative Error

22       Trimble argues that reversal of the judgment is imperative
         since the cumulative impact of individual errors was
23       prejudicial. The Attorney General argues the contrary.
         Since Trimble fails to persuade us that any error
24       occurred, his cumulative error argument is meritless.
         (<u>People v. Heard</u> (2003) 31 Cal.4th 946, 982.)
25

26  <u>People v. Trimble</u>, 2011 WL 2176906, at *8.

27  ///

28

                                    31

B.   Analysis

The Supreme Court has established that the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair, even though no single error rises to the level of a constitutional violation or would independently warrant reversal.  Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v. Mississippi, 410 U.S. 284, 298, 302-03 (1973)).  Traditional principles of due process provide that cumulative errors warrant habeas relief only where the errors have so infected the trial with unfairness that the resulting conviction denies due process, such as where the combined effect of the errors had a substantial and injurious effect or influence on the jury's verdict, id. (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) and Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)), and where the combined effect of individually harmless errors renders a criminal defense far less persuasive than it might otherwise have been, id. (citing Chambers, 410 U.S. at 294, 302-03).

Here, the evidence of Petitioner's guilt of the offense is very strong.  Petitioner was given the benefit of a defense that was fully argued and submitted to jurors who were properly instructed on the law.  Petitioner has not shown how any error or combination of errors has interfered with Petitioner's defense or had a substantial or injurious effect or influence on the jury's verdict.  See Parle v. Runnels, 505 F.3d at 927-28.  Accordingly, it will be recommended that the Court deny Petitioner's claim of a denial of due process from cumulative error.

///

///

VIII.   <u>Ineffective Assistance of Trial Counsel in Failing
        to Investigate Witnesses</u>

Petitioner alleges he suffered the ineffective assistance of trial counsel when counsel failed to investigate the victim, Mark Serrano, the witnesses at the motel, and an expert witness; permitted the jury to view Petitioner in chains; and failed to set forth an unspecified defense or defenses.  (Pet, doc. 1, 6.)

Respondent disputes Petitioner's allegations that Petitioner exhausted state court remedies as to these claims.  Respondent argues that although these claims are unexhausted, they are nevertheless subject to denial because they are not colorable claims.

Although generally a habeas petitioner will not be afforded relief in the courts unless he has exhausted available state judicial and administrative remedies, <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 494-95 (1973), a court may reach the merits of a claim even in the absence of exhaustion where it is clear the claim is not colorable.  28 U.S.C. § 2254(b)(2) (an application for a writ of habeas corpus may be denied on the merits, notwithstanding the applicant's failure to exhaust the remedies available in the courts of the state); <u>Granberry v. Greer</u>, 481 U.S. 129, 134-35 (1987); <u>Cassett v. Stewart</u>, 406 F.3d 614, 624 (9th Cir. 2005).  The Court will proceed to analyze Petitioner's ineffective assistance claims.

///

A. <u>The State Court's Decision</u>

The last reasoned decision on these claims is that of the MCSC, which in ruling on a petition for writ of habeas corpus rejected Petitioner's claims in pertinent part as follows:

> On May 23, 2012, petitioner filed a petition for writ of habeas corpus in this Court alleging the following two grounds for relief: (1) that his trial defense counsel was ineffective for failing to investigate and prepare a defense; and (2) that his request to represent himself was denied in violation of the Sixth and Fourteenth Amendments to the United States Constitution and *Faretta v. California* (1975) 422 U.S. 806.
>
> Ground 1 of the petition alleges several claims of ineffective assistance of counsel. To show a denial of the right to effective assistance of counsel, petitioner must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms; and (2) that the deficient performance prejudiced the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 691-692 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.) To show prejudice, a defendant has the burden of showing, by a preponderance of the evidence, that there is a reasonable probability he or she would have received a more favorable result had his or her counsel's performance not been deficient. (*Strickland, supra*, at pp. 693-694; *People v. Ledesma, supra*, 43 Cal.3d at p. 218.)
>
> "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." (*Strickland, supra*, at p. 695.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*In re Avena* (1996) 12 Cal.4th 694, 721.)
>
> Even if this Court assumed, without making a finding, that the instances of ineffective assistance of counsel cited by petitioner constituted ineffective assistance, it is not reasonably probable that petitioner would have received a more favorable result than the jury's verdict of attempted willful, deliberate, and premeditated murder

1
2
3
4

> and attempted robbery in an inhabited dwelling house.
> (*Strickland, supra*, 466 U.S. at pp. 693-694.) Petitioner
> has not satisfied the second prong of the *Strickland* test
> and therefore was not denied his constitutional right to
> effective assistance of counsel. (*Strickland, supra*, at
> pp. 687, 691-692.)

5

(LD 14, 2-4.)

6

        B.   Investigation

7
8
9
10
11

        Petitioner's allegation of failure to investigate is not

supported by specific facts as to the nature and extent of any

investigation undertaken, or that should have been undertaken, by

counsel.

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        There is no showing of what information or testimony any

witness at the motel would have contributed.  Petitioner has also

failed to show what additional information would have been

discovered during an investigation of victim Caydee Mawhorr or

witness Mark Serrano, whom trial counsel effectively cross-examined.

(LD 3, 1 RT 178-201 [cross-examination of the victim concerning her

opportunity to perceive, perceptions, and memory, including detailed

questioning concerning her physical condition and ingestion of

alcohol and illicit substances at and near the time of the offenses

and impeachment with respect to specific testimony]; LD 4, 2 RT 341-

49 [cross-examination of witness Mark Serrano concerning his

relationship with the parties, ingestion of drugs and alcohol at the

time of the offenses, repeated failures to appear in court, and a

prior identification ].)  The record permits an inference that

defense counsel had received evidence in advance of trial, such as photographs of the victim, and had received the criminal histories of Petitioner and witness Serrano.  (LD 3, 1 RT 54-59.)

Petitioner has also failed to show that any such investigation or testimony would have been reasonably likely to have made a difference in the outcome of the trial.  Finally, Petitioner has failed to show what expert witnesses should have been called, what their testimony might have been, and whether they would have testified on behalf of the defense.  The Court is left to speculate as to all these matters, which is insufficient to establish prejudice.  See Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (failure to retain an arson expert was not shown to be prejudicial where there was no evidence that the expert would have testified on the petitioner's behalf).

The evidence against Petitioner was very strong.  Petitioner's repeated threats and planning warranted a conclusion that the homicide was not committed under the influence of intense emotion that obscured Petitioner's reasoning or judgment so as to permit a finding of attempted voluntary manslaughter.  Under governing California law, an ordinary person of average disposition would not have been provoked sufficiently to attempt to kill a prostitute because of unfounded speculation that the prostitute had slept with a cousin.  A fair-minded jurist could agree with the state court that in light of all the circumstances, Petitioner had not

36

established any prejudice.

    C. <u>Viewing Petitioner in Chains</u>

  The incident from which Petitioner's claim arises involved a single juror's observation of Petitioner being transported from court and across a street to jail by law enforcement officers.  The witness saw this after court while awaiting a ride, and she informed an officer of her observation and moved to a new location.  (LD 4, 2 RT 447-55.)  The trial judge examined both a law enforcement officer and the juror, who informed the court during voir dire that she had mentioned to other jurors that she had seen everyone after court but had not said anything more.  (<u>Id.</u> at 458-60.)

  The trial judge admonished the juror not to say anything to the remaining jurors, declined defense counsel's request to dismiss the juror, and instructed the jurors not to take the defendant's custodial status into their deliberations.  (<u>Id.</u> at 461-62, 464-65.) Petitioner had been dressed in street clothes throughout the trial. (<u>Id.</u> at 463.)  Evidence of telephone calls made while Petitioner had been in custody was already before the jury.  (<u>Id.</u> at 448-49.)

  The Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury unless the trial court has determined in the exercise of its discretion that the restraints are justified by a state interest specific to a particular trial.  <u>Deck v. Missouri</u>, 544 U.S. 622, 629 (2005).  The Court in <u>Deck</u> was concerned with the need for a defendant to assist counsel, the

formal dignity of the courtroom, and the presumption of innocence. Id. at 630-31.  In the absence of a particularized determination that shackling is justified, visible shackling in the courtroom is inherently prejudicial.  Id. at 635.  However, occasional observations by some jurors of a defendant in shackles while being transported requires a showing of actual prejudice for relief. Wharton v. Chappell, 765 F.3d 953, 966-67 (9th Cir. 2014) (collecting similar cases).

Here, with respect to the effect of the appearance of Petitioner in shackles, there is no testimony or other evidence indicating prejudice.  It is likely that jurors understood that shackling during transportation was a regular incident of custody, and there was no indication that Petitioner was singled out for special treatment.  The observation was made by only one juror, who appeared ready to follow the trial court's instructions.  There is no basis for an inference that any other juror saw Petitioner in custody.  Petitioner was clearly implicated in the charged offense. Under the circumstances, it is objectively reasonable to conclude that brief observation of shackling outside the courtroom was not prejudicial.

Even though the shackling did not appear to be prejudicial, counsel diligently moved to dismiss the single juror who observed Petitioner in shackles.  Petitioner has not shown that with respect to the shackling, counsel engaged in objectively unreasonable

conduct or that any such conduct resulted in any injury to Petitioner.   Accordingly, it will be recommended that the Court deny Petitioner's claim of ineffective assistance of counsel in relation to Petitioner's being observed while shackled.

IX.   <u>Denial of Request for Self-Representation</u>

Petitioner alleges he requested to represent himself because he could not trust his counsel, and the denial of his clear request was prejudicial to his defense. (Pet., doc. 1, 6.)   Respondent contends that although Petitioner's claim was unexhausted and procedurally defaulted, the claim should be denied because it is not colorable.

In <u>Faretta v. California</u>, 422 U.S. 806, 819-20, 832-33 (1975), the Court held that the Sixth Amendment extends to the accused a right to represent himself in his defense of criminal charges, which may be exercised once the accused is made aware of the dangers and disadvantages of self-representation and thereafter knowingly and intelligently waives the right to counsel.   <u>Id.</u> at 835.

Here, the trial court granted Petitioner's motion to represent himself on July 7, 2009.   (LD 6, ART 2-6.)   On September 2, 2009, the time set for trial, Petitioner stated he was not ready to defend himself and that he needed help.   (ART 13-14.)   He stated he wanted a lawyer appointed to represent him, even if his previous lawyer resumed representation of him. (ART 15-17.)   The court granted his request and appointed the public defender to represent him. (ART 15-20.)

Because the Court granted Petitioner's motion to represent himself, Petitioner does not have a colorable claim that the trial court wrongfully denied Petitioner's motion.   Accordingly, it will

1  be recommended that the Court deny Petitioner's claim concerning the

2  allegedly wrongful denial of his motion to represent himself.

3       X.  <u>Certificate of Appealability</u>

4       Unless a circuit justice or judge issues a certificate of

5  appealability, an appeal may not be taken to the Court of Appeals

6  from the final order in a habeas proceeding in which the detention

7  complained of arises out of process issued by a state court.  28

8  U.S.C. § 2253(c)(1)(A); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336

9  (2003).  A district court must issue or deny a certificate of

10 appealability when it enters a final order adverse to the applicant.

11 Habeas Rule 11(a).

12      A certificate of appealability may issue only if the applicant

13 makes a substantial showing of the denial of a constitutional right.

14 § 2253(c)(2).  Under this standard, a petitioner must show that

15 reasonable jurists could debate whether the petition should have

16 been resolved in a different manner or that the issues presented

17 were adequate to deserve encouragement to proceed further.  <u>Miller-</u>

18 <u>El v. Cockrell</u>, 537 U.S. at 336 (quoting <u>Slack v. McDaniel</u>, 529 U.S.

19 473, 484 (2000)).  A certificate should issue if the Petitioner

20 shows that jurists of reason would find it debatable whether: (1)

21 the petition states a valid claim of the denial of a constitutional

22 right, and (2) the district court was correct in any procedural

23 ruling.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000).

24      In determining this issue, a court conducts an overview of the

25 claims in the habeas petition, generally assesses their merits, and

26 determines whether the resolution was debatable among jurists of

27 reason or wrong.  <u>Id.</u>  An applicant must show more than an absence

28 of frivolity or the existence of mere good faith; however, the

40

applicant need not show that the appeal will succeed.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

XI.  <u>Recommendations</u>

Based on the foregoing analysis, it is RECOMMENDED that:

1)  The petition for writ of habeas corpus be DISMISSED insofar as Petitioner raises state law claims;

2)  The petition for writ of habeas corpus otherwise be DENIED;

3)  Judgment be ENTERED for Respondent; and

4)  The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.

41

Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   **May 19, 2015**                              **/s/ Sheila K. Oberto**
                                         UNITED STATES MAGISTRATE JUDGE

42